# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| CRIMSON YACHTS, etc., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION NO. 08-0334-WS-C |
| | ) |
| M/Y BETTY LYN II, etc., et al., | ) |
| | ) |
|     Defendants. | ) |

## ORDER

This matter is before the Court on the motion of defendant Encore Bank ("Encore") for summary judgment as to its counterclaim against plaintiff Crimson Yachts ("Crimson"). (Doc. 117). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 117, 123-25),[1] and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion is due to be denied.

## BACKGROUND

Crimson, which owns a ship repair yard, entered a contract with defendant Blyn II Holding, LLC ("Blyn") to perform certain repairs on the defendant M/Y Betty Lyn II ("Betty Lyn"). The work began on approximately October 1, 2006. Blyn timely paid all invoices until that of March 26, 2008. The amount of unpaid invoices exceeds $600,000, which Crimson claims along with a 10% retainage on all work done to date. Meanwhile, Encore perfected a preferred ship mortgage ("PSM") on the Betty Lyn to the tune of $6

---

[1] Crimson's motion to file a sur-reply, (Doc. 125), which has drawn no opposition from Encore, is **granted**. In light of this ruling, Crimson's alternative motion to partially strike Encore's reply brief, (Doc. 125), is **denied**.

million on or about June 11, 2007.[2] The dispositive issue on Encore's motion is whether its PSM primes Crimson's maritime lien.[3]

## DISCUSSION

When a vessel is sold by order of court in a civil action in rem to enforce a PSM or maritime lien, "the preferred mortgage lien ... has priority over all claims against the vessel (except for expenses and fees allowed by the court, costs imposed by the court, and preferred maritime liens) ...." 46 U.S.C. 31326(b)(1).[4] A "preferred maritime lien" is "a maritime lien on a vessel ... arising before a preferred mortgage was filed under section 31321 of this title ...." *Id.* § 31301(5)(A). The priority question thus boils down to this: did Crimson's maritime lien arise before or after June 11, 2007?

"[A] person providing necessaries to a vessel ... has a maritime lien on the vessel ...." 46 U.S.C. § 31342(a). "Thus, the federal courts have consistently held that a maritime lien arises when the necessary is provided to the vessel." *Dresdner Bank AG v.*

---

[2]Given the Court's disposition of Encore's motion, it is not necessary to determine whether Encore in fact has a PSM or when it was perfected. Crimson in its briefing assumes that Encore perfected a PSM in June 2007, and the Court does likewise.

[3]The Court previously ruled that Crimson has no maritime lien because the Betty Lyn was not a vessel as to which a maritime lien could arise, but the Eleventh Circuit has ruled otherwise. *Crimson Yachts v. Betty Lyn II Motor Yacht*, 2010 WL 1434098 (11th Cir. 2010). Encore does not dispute that repairs constitute necessaries or that the provision of necessaries gives rise to a maritime lien, and both propositions are plainly correct. 46 U.S.C. §§ 31301(4), 31342(a).
In addition to its maritime lien, Crimson claims a statutory watercraft lien under Alabama law as well as a possessory lien under common law. However, Crimson "agrees that federal law forecloses these options with respect to Crimson gaining priority over Encore's preferred ship mortgage." (Doc. 123 at 11).

[4]A preferred mortgage "is a lien on the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by the vessel." *Id.* § 31325(a). A preferred mortgage is a PSM, *e.g., Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1233, 1238 (11th Cir. 2006), and the parties use the terms synonymously.

*M/V Olympia Voyager*, 465 F.3d 1267, 1276 (11th Cir. 2006) (emphasis omitted). Encore admits this is a correct statement of law. (Doc. 124 at 4). Because Crimson provided repair services beginning in October 2006, its maritime lien arose at that time. Encore proposes a number of ingenious ways of avoiding the resulting implication that Crimson's maritime lien has priority over its own.

First, Encore backtracks, suggesting that no lien arose until March 2008 because, until that point, Blyn paid all invoices when due. (Doc. 124 at 4-5 "[T]he maritime lien Crimson asserts cannot have arisen until it performed work for which payment is owed."). For this proposition Encore relies on a general statement from beyond the maritime realm that, "[i]n the absence of an obligation to be secured there can be no lien." *United States v. Phillips*, 267 F.2d 374, 377 (5th Cir. 1959). This is probably an unobjectionable statement as far as it goes, but it does not go far enough to help Encore. Blyn's contractual obligation is to pay Crimson for its repair work, and that obligation has existed without interruption ever since the repair work began — a point Encore expressly concedes. (Doc. 124 at 6). There has thus at all times been an "obligation to be secured." More fundamentally, Encore's argument impermissibly ignores *Dresdner*'s pronouncement that a maritime lien for necessaries arises not when an invoice remains unpaid but at the moment services are provided.[5]

Second, Encore argues that "a maritime lien attaches when a contract ceases to be executory." (Doc. 124 at 5). In this case, Encore insists, "the contract remained executory [until March 2008 or later] because both parties still had obligations to

---

[5]*Dresdner* and other cases have often stated that "[a] maritime lien is [a] special property right in a ship given to a creditor by law as security for a debt or claim subsisting from the moment the debt arises." 465 F.3d at 1272 (internal quotes omitted). As the Fifth Circuit has explained, this language does not mean that the maritime lien arises only when the unpaid debt sought to be recovered arises; rather, it signifies that the lien — already in existence — persists or continues after the debt arises, perfecting the lienor's right to sue the vessel in rem. *Bank One, N.A. v. Mr. Dean MV*, 293 F.3d 830, 837-38 (5th Cir. 2002). At any rate, Encore makes no argument based on the quoted language.

perform." In particular, the contract remained executory because "Crimson had a duty to complete the repairs." (*Id.* at 6). While it appears to be "well settled that no lien attaches for the breach of an executory contract," *Bunn v. Global Marine, Inc.*, 428 F.2d 40, 48 n.10 (5th Cir. 1970), Encore is wrong to suggest that a contract remains executory so long as the complaining party has not completed its entire performance under the contract. On the contrary, a contract is executory only "until the parties have entered into performance." *Id.*[6] Encore appears to believe that *Bank One, N.A. v. Mr. Dean MV*, 293 F.3d 830 (5th Cir. 2002), supports its position, but that case is clear that a maritime lien arises when the contract "cease[s] to be *wholly* executory." *Id.* at 834 (emphasis added).[7] In this case, the parties entered into performance, and the contract ceased to be wholly executory, when Crimson first provided repair services in October 2006.[8]

---

[6]*Accord Navieros Inter-Americanos, S.A. v. M/V Vasilia Express*, 120 F.3d 304, 313 (1st Cir. 1997) ("Under the executory contract doctrine, charterers have no maritime lien until performance of the charter contract *begins*.") (emphasis added); *E.A.S.T., Inc. v. M/V Alaia*, 876 F.2d 1168, 1174 (5th Cir. 1986) ("This [executory contract] doctrine reflects the special nature of the maritime lien which ... is based ... on the fiction that the vessel may be a defendant in a breach of contract action when the vessel itself *has begun to perform* under the contract.") (emphasis added); *Rainbow Line, Inc. v. M/V Tequila*, 480 F.2d 1024, 1027 n.6 (2nd Cir. 1973) ("Delivery of the vessel *commences the performance* of a time charter and removes it from executory status.") (emphasis added); *Boston Bermuda Cruising, Ltd. v. M/V Royal Majesty*, 1997 WL 882597 at *3 (D. Mass. 1997) ("When performance *starts* under a maritime contract ... it is no longer executory ....") (emphasis added).

[7]The very passage on which Encore relies states that a vessel "begins performance" of a time charter contract when it is placed at the charterer's disposal, and the contract "ceases to be executory at that point." *Id.* at 835 (internal quotes omitted).
Encore also relies on a case generally describing an executory contract in the context of bankruptcy law, which has no obvious relevance here.

[8]Crimson entered into performance by performing repair work, and Blyn and the vessel entered into performance by arriving for repair. Even if their first performance were construed to be payment of the first invoice, that occurred long before June 2007. (Doc. 28, Short Affidavit at 5 (Blyn was invoiced bimonthly and paid each invoice until March 2008)).

Third, Encore argues that Crimson's lien was extinguished by Blyn's payment of the initial invoices, such that Crimson's lien no longer existed as of July 2007 and only resurfaced (or a new lien appeared) in March 2008. (Doc. 124 at 4). For this proposition, Encore relies exclusively on two non-maritime cases that do not remotely support it. Nor has Encore explained why the Court should consider authorities addressing tax liens and hospital liens to be persuasive in the arcane context of maritime liens.[9] Finally, even if the lien was partially extinguished by partial payment, it remained, inchoate but existing, until breach. *Bank One*, 293 F.3d at 838.

The Eleventh Circuit in *Dresdner* noted that a number of authorities "stand ... for a rule of priority ranking: ongoing performance under a single contract gives rise to a single lien, and the first day of performance establishes the lien's attachment date for priority ranking purposes." 465 F.3d at 1274. This is precisely the point at issue here, and Encore's final gambit is to attack *Dresdner*'s summation as dicta. (Doc. 124 at 6-7). Encore's argument is correct, but it is also insignificant. *Dresdner* may not have embraced the rule as circuit law, but neither did it reject or question the rule. As is often the case in admiralty matters, resort must be had to the whole body of maritime law to fill gaps in circuit precedent, and that body appears uniformly to reject Encore's position.[10]

---

[9] "A lien is a lien is a lien, but a maritime lien is not. ... Accordingly, we note that our analysis should not be primarily guided by reference to the commercial law of secured credit or the land-based common law of liens." *Bank One*, 293 F.3d at 832 (internal quotes omitted).

[10]*Bank One*, 293 F.3d at 837 ("We agree ... that these cases suggest that the relevant date for continuing contracts should be the date of commencement of performance ..." and rejecting the argument that a maritime lien arises only upon breach); *Caterpillar Financial Services, Inc. v. Aleutian Chalice*, 1994 WL 468187 (W.D. Wash. 1994) (a single contract gave rise to a single lien, attaching the first day of performance and having priority over a later mortgage); *Redwood Empire Production Credit Association v. Fishing Vessel Owners Marine Ways, Inc.*, 530 F. Supp. 75 (W.D. Wash. 1981) (a single repair contract under which performance began before the PSM lien attached gave the maritime lien priority, even though the unpaid portion of the repairs

# CONCLUSION

For the reasons set forth above, Encore's motion for summary judgment is **denied**.

DONE and ORDERED this 25th day of May, 2010.

                                             s/ WILLIAM H. STEELE
                                             CHIEF UNITED STATES DISTRICT JUDGE

---

was for work done after the PSM lien attached); 1 T. Schoenbaum, Admiralty and Maritime Law § 9-6 at 548 (4th ed. 2004) ("If a creditor enters into a contract that calls for performance both before and after the date of the mortgage, the date of the formation of the contract will control the priority of the entire claim, even those performances arising subsequent to the mortgage, if it is determined by a fair construction of the agreement to be a single contract."); G. Gilmore & C. Black, The Law of Admiralty 755-56 (2nd ed. 1975) ("Where repairs, being performed under contract, were begun before but not completed until after recording and indorsement, it has reasonably been held that the entire repair claim was entitled to priority.").