# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| CRIMSON YACHTS, etc., | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION 08-0334-WS-C |
| M/Y BETTY LYN II, etc., et al., | ) ) ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the motion of defendant BLyn II Holding, LLC ("BLyn") to stay this action. (Doc. 142). BLyn seeks a stay pending resolution of two related proceedings: (1) its petition for writ of certiorari to the United States Supreme Court; and (2) the interlocutory appeal of the plaintiff ("Crimson") and its representatives to the Texas Court of Appeals. Crimson has filed a response and BLyn a reply, (Docs. 148, 149), and the motion is ripe for resolution.[1] After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion to stay is due to be denied.

## I. Petition for Writ of Certiorari.

Crimson, which owns a ship repair yard, entered a contract with BLyn to perform certain repairs on its vessel, the defendant Betty Lyn II ("Betty Lyn" or "the Vessel"). The Vessel was arrested because Crimson asserted a maritime lien, but BLyn moved to vacate the arrest on the grounds she was not a vessel capable of supporting such a lien. After briefing and oral argument, the Court in February 2009 entered an order agreeing

---

[1] Defendant Encore Bank has filed a brief response noting that it does not oppose the motion. (Doc. 145).

[1]

with BLyn, vacating the Vessel's arrest, and dismissing the in rem claims against her. (Doc. 45). Crimson pursued an interlocutory appeal of this order, and the Eleventh Circuit in April 2010 ruled the Betty Lyn is a vessel and therefore subject to maritime liens and this Court's admiralty jurisdiction. *Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864 (11th Cir. 2010). On June 10, 2010, BLyn filed a petition for writ of certiorari to review this ruling. (Doc. 142 at 3).

BLyn points to no authority for staying trial court proceedings while a litigant pursues certiorari review on a single issue in the case. Crimson suggests that such a stay must be pursued under 28 U.S.C. § 2101(f), but by its terms that provision applies only to stays of "the execution and enforcement of such judgment or decree" entered by the appellate court, and BLyn does not seek to stay enforcement of the Eleventh Circuit's ruling but to stay all trial court proceedings pending review of that ruling. The Court assumes for present purposes that the stay BLyn seeks is theoretically available under some fount of authority unidentified by the parties.

BLyn likewise offers no authority setting forth a test or list of factors to consider in evaluating its motion to stay. Nor has it opposed Crimson's proposal that the Court employ the test applicable under Section 2101(f). (Doc. 148 at 7-9). Accordingly, the Court looks to that standard.

"In determining whether to grant a stay, we consider … whether the applicant has demonstrated (1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari or to note probable jurisdiction; (2) a fair prospect that a majority of the Court will conclude that the decision below was erroneous; and (3) a likelihood that irreparable harm will result from the denial of a stay." *Indiana State Police Pension Trust v. Chrysler LLC*, 129 S. Ct. 2275, 2276 (2009) (internal quotes omitted); *accord Barnes v. E-Systems Inc. Group Hospital Medical & Surgical Insurance Plan*, 501 U.S. 1301, 1302 (1991) (Scalia, J.). "In addition, in a close case it may be appropriate to balance the equities, to assess the relative harms to the parties, as well as the interests of the public at large." *Chrysler*, 129 S. Ct. at 2276 (internal quotes omitted). Despite BLyn's failure to oppose the plaintiff's invocation of this standard in

its opposition brief, BLyn did not address the standard in its reply brief, and that omission --- given its burden of demonstrating the standard is satisfied --- is fatal.

A successful petition for writ of certiorari is "statistically unlikely." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 303 (2000) (Scalia, J., concurring in the judgment). BLyn offers nothing to show a reasonable probability that the Supreme Court will do the statistically unlikely and grant its petition. It does not even repeat for the Court's benefit whatever argument it made to the Supreme Court as to why its petition should survive the winnowing process that results in the rejection of most such petitions. BLyn has plainly failed to demonstrate a reasonable probability that certiorari will be granted.

Nor has BLyn shown a fair prospect that the Supreme Court would overturn the Eleventh Circuit's ruling were it to grant the writ. This Court and the Eleventh Circuit read Supreme Court precedent differently[2] but, even were the Supreme Court to agree with this Court's reading, it could still affirm the Eleventh Circuit on other grounds.[3]

Finally, BLyn has not shown that it will suffer irreparable harm should a stay not be imposed pending resolution of its petition. BLyn argues that the existence vel non of a maritime lien (which depends on the Betty Lyn's status as a vessel): (1) impacts the priority of the competing liens of Crimson and Encore; (2) determines whether BLyn can

---

[2] "[T]he 'in navigation' requirement is an element of the vessel status of a watercraft. It is relevant to whether the craft is used, or capable of being used for maritime transportation." *Stewart v. Dutra Construction Co.*, 543 U.S. 481, 496 (2005). This Court, giving the terms "requirement" and "element" their usual mandatory construction, read this passage as making essential to vessel status that the craft be in navigation, and it concluded that, under a host of authorities, the major repairs experienced by the Betty Lyn took her out of navigation. The Eleventh Circuit, without citing these terms or the first quoted sentence, concluded that the term "relevant" in the second sentence precluded "in navigation" from being required for vessel status. 603 F.3d at 874. This Court construed the second sentence merely as explaining why being "in navigation" is a "requirement" and "element" of vessel status, not as nullifying the essential nature of the "in navigation" inquiry.

[3] These might include, for example, the policy reasons noted by the Eleventh Circuit for extending vessel status to craft undergoing major repairs. *E.g., Crimson Yachts*, 603 F.3d at 876 ("Congress created maritime liens to protect both ships in need of service and persons willing to provide such services. Congress could not have intended as the need for protection increased, the law's protection would retract.").

move the Vessel without posting bond; and (3) determines whether maritime law applies to the plaintiff's claim. (Doc. 142 at 5-8).

While the absence of a maritime lien apparently would give Encore's claim priority over Crimson's, (Doc. 131), it is difficult to see how this benefits BLyn, much less how BLyn could be irreparably harmed should trial proceed before the Supreme Court rules on BLyn's petition. Any harm to the other parties can be obviated after trial by postponing satisfaction of any judgment against BLyn until the Supreme Court rules and thereby decides priority.

BLyn's ability to move the Vessel without posting bond is totally unrelated to whether trial proceeds. What prevents BLyn from moving the Vessel without bond is the Eleventh Circuit's ruling, and neither proceeding to trial nor staying trial will affect the length of time that ruling remains in place.

BLyn argues that Crimson's case will proceed to trial under either maritime law or Alabama law, but not both, and that if trial proceeds under maritime law and the Supreme Court subsequently rules there is no maritime lien, a second trial will be required. Crimson's only claim against BLyn is for breach of contract, and BLyn has not explained how the choice of federal or state law affects the assessment of such a claim. The existence of a maritime lien vel non affects Crimson's ability to seek satisfaction of any judgment in its favor by selling the Vessel, but BLyn has not shown it to affect BLyn's potential liability for breach of contract. Simply stating the obvious --- that there are differences between maritime law and Alabama law --- does not establish that there are differences germane to this case.

At any rate, even were a second trial to be required, BLyn has not established that a second trial qualifies as irreparable harm for purposes of a stay pending a decision on its certiorari petition. *See Triangle Construction & Maintenance Corp. v. Our Virgin Island Labor Union*, 425 F.3d 938, 947 n.8 (11th Cir. 2005) ("'Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.'") (quoting *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974)).

In its reply brief, BLyn suggests it will suffer irreparable injury absent a stay because, should Crimson prevail at trial, it could force a sale of the Vessel which could not be undone were the Supreme Court ultimately to rule that Crimson has no maritime lien. (Doc. 149 at 8). That eventuality is easily avoided by postponing any sale pending the Supreme Court's decision and furnishes no grounds for finding irreparable harm.[4]

BLyn has demonstrated none of the three circumstances required for a stay. The Court thus need not consider the additional factors relevant to close cases. Since BLyn has not addressed these factors, they could inure to its benefit in any event.

## II. Interlocutory Appeal.

On April 30, 2008, BLyn sued Crimson and its representatives, Travis Short and Ben Forrest, in Texas state court. BLyn also named as defendants Breathwit Marine ("Breathwit") and Overing Yacht Design ("Overing"), who performed earlier repairs and refit design work, respectively. In July 2008, Crimson, Short and Forrest ("the Texas defendants") entered a special appearance challenging jurisdiction. Discovery apparently proceeded nonetheless, and in September 2009 the trial court denied the special appearance. The Texas defendants appealed to an intermediate Texas court, which heard oral argument on May 27, 2010.

On June 11, 2008, Crimson filed this action against BLyn and the Vessel. In February 2009, BLyn moved to add a counterclaim against Crimson and to bring in Short and Forrest as third-party defendants, in order to assert the same claims pending against them in the Texas action. (Doc. 43). After briefing, the Court granted the motion. (Doc. 67).

BLyn first argues the Court should stay this action pending resolution of the interlocutory appeal simply because "the appeal is non-frivolous." (Doc. 142 at 3). The only authority BLyn cites for this test concerns the standard a district court should use in

---

[4] Any bond that BLyn might have to post in order to delay execution would not, as noted above, constitute irreparable harm.

determining whether to stay litigation before it pending appellate resolution of its own denial of a motion to compel arbitration. That line of authority has nothing to do with the propriety of a stay of federal proceedings pending resolution of related state proceedings.

Generally speaking, "as between state and federal courts, the rule is that pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Ambrosia Coal and Construction Co. v. Pages Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004) (citation omitted); *see also Wexler v. Lepore*, 385 F.3d 1336, 1341 (11th Cir. 2004) ("exercise of jurisdiction by the district court merely preserves the federal forum for federal claims raised by plaintiffs in a federal proceeding, although a similar state action was also filed"). Indeed, the Eleventh Circuit has emphasized federal courts' "virtually unflagging obligation ... to exercise the jurisdiction given them" and has stressed that "[a] policy permitting federal courts to yield jurisdiction to state courts cavalierly would betray this obligation." *Ambrosia Coal*, 368 F.3d at 1328 (citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976)). On that basis, the law of this Circuit is that "federal courts can abstain to avoid duplicative litigation with state courts only in exceptional circumstances" such as those warranting *Colorado River* abstention. *Id.* BLyn invokes *Colorado River* to support its motion for a stay. (Doc. 142 at 3-5).

The *Colorado River* doctrine authorizes a federal district court to dismiss or stay an action where there is an ongoing parallel action in state court, but only under "exceptional circumstances." *Moorer v. Demopolis Waterworks and Sewer Board*, 374 F.3d 994, 997 (11th Cir. 2004); *see also Ambrosia Coal*, 368 F.3d at 1328. Indeed, the Supreme Court has framed this doctrine as an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813. In applying *Colorado River*, the Court is mindful of the admonition that "[o]nly the clearest of justifications will warrant dismissal of the federal action" under that doctrine. *Ambrosia Coal*, 368 F.3d at 1329 (citation omitted).

The Eleventh Circuit has identified six factors to be considered in assessing whether *Colorado River* abstention is proper, to-wit: (i) whether any court has assumed

jurisdiction over property; (ii) the relative inconvenience of the fora; (iii) the potential for piecemeal litigation; (iv) the temporal order in which each forum obtained jurisdiction; (v) whether state or federal law governs; and (vi) whether the state court is adequate to protect the parties' rights. *See Ambrosia Coal*, 368 F.3d at 1331. This Court "must weigh these factors with a heavy bias in favor of exercising jurisdiction." *TranSouth Financial Corp. v. Bell*, 149 F.3d 1292, 1295 (11th Cir. 1998). No one factor is necessarily dispositive; rather, "the factors must be considered flexibly and pragmatically, not as a mechanical checklist." *Ambrosia Coal*, 368 F.3d at 1332. However, "[o]ne factor alone can be the sole motivating reason for the abstention." *Moorer*, 374 F.3d at 997.

The most surprising aspect of BLyn's argument is that it is raised at all. In March 2009, in its effort to persuade the Court to allow it to file counterclaims and third-party claims mirroring its existing claims against the Texas defendants, BLyn insisted that "[t]his Court should not abstain from exercising that [subject matter] jurisdiction under the doctrine announced in *Colorado River* ...." (Doc. 61 at 2). BLyn then reviewed each of the six factors listed above and argued that every single one of them weighed against abstention. (*Id.* at 5). Although its assessment of the factors differed somewhat from BLyn's, the Court agreed that abstention was inappropriate and thus allowed BLyn to file its counterclaims and third-party claims. (Doc. 67). Because different counsel filed the motion to stay than submitted last year's brief rejecting *Colorado River* abstention, it is possible that BLyn's inconsistent positions are the result of oversight. It is nonetheless troubling that, even after Crimson pointed out the inconsistency, (Doc. 148 at 20), BLyn did not attempt in its reply brief to explain its divergent positions.

At any rate, BLyn's original position continues to be the correct one. Of the six listed factors, BLyn invokes only two, effectively conceding the others. (Doc. 142 at 4-5).[5] Even those two, however, do not support a stay.

---

[5] The Court concurs that the four factors unnoted by BLyn do not favor abstention, for reasons including, but not limited to, those articulated in its earlier order. (Doc. 67).

With respect to the fourth factor, the Texas action was filed before this one, but the relevance of that two-month head start after the passage of over two years is doubtful. The temporal inquiry looks to "how much progress has been made in the two actions," *Ambrosia Coal*, 368 F.3d at 1333, and, contrary to BLyn's assertion, this case is more advanced than the Texas action. Here, the parties' joint pretrial document is due today, the final pretrial conference will be held in one week, and trial will be conducted in August, one month from now. In the Texas action, it is still unknown whether the litigation against the Texas defendants can proceed at all.

BLyn posits that a decision from the appellate court "is imminent," (Doc. 149 at 6), but it offers no explanation how it is privy to the inner workings of the state judiciary. Certainly it would be uncommon for an appellate decision to be rendered only a month after oral argument. At any rate, that decision is not the end of the appellate process but only the beginning, and BLyn has not explained why the Court should assume the losing party will accept the decision of the Court of Appeals without seeking relief from the Texas Supreme Court. Even after all appeals are exhausted, and assuming BLyn prevails,[6] the case must still be returned to the trial court, which must conduct a pretrial conference, place the case on its trial calendar, and proceed to trial. BLyn has hypothesized no set of circumstances under which all this could occur before the August trial of this action.

With respect to the third factor, BLyn argues that abstention will avoid piecemeal litigation (because Breathwit and Overing are not parties here), but this does not seem possible. While BLyn has sued Crimson in Texas, BLyn's lengthy recitation of the activity that has occurred in that action does not include a representation that Crimson has sued BLyn. Instead, Crimson appears to have done nothing more than challenge personal jurisdiction and allow discovery to occur. (Doc. 149 at 4-5). According to BLyn, the

---

[6] BLyn concedes that the Texas defendants' appeal is not frivolous, (Doc. 142 at 3), so there is at least a decent chance they will ultimately be found not subject to jurisdiction in Texas. BLyn suggests no reason the Court should abstain in favor of a case in which jurisdiction is lacking.

only remaining activity following the interlocutory appeal is the pretrial conference and trial, (*id*. at 5-6), which means it is too late for Crimson to sue BLyn in that action. Thus, trial must proceed in this Court on Crimson's claims against BLyn even if trial were to proceed in Texas on BLyn's claims against Crimson and its representatives. That is the archetype of piecemeal litigation, and abstaining would not prevent it but cause it.

There are additional fragments of these two lawsuits. In Texas, BLyn has claims against Breathwit and Overing, who are not parties here, while Encore has claims against BLyn here even though it is not a party in the Texas action. In addition, Crimson has claims directly against the Vessel that are not repeated in the Texas litigation. Under the circumstances, it is not possible to eliminate one of these lawsuits in favor of the other.

"Colorado River's factor concerning the avoidance of piecemeal litigation does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is *abnormally excessive or deleterious*." *Ambrosia Coal*, 368 F.3d at 1333 (emphasis added). There must be more than "some unremarkable repetition of efforts and possibly some piece-by-piece decision-making" to satisfy this factor, *id*., and BLyn has shown at most only the imperfect overlapping present "in the vast majority of federal cases with concurrent state counterparts." *Id*.

In sum, none of the six factors favor abstention, and most weigh against abstention. Thus, a stay under *Colorado River* would be inappropriate.

## CONCLUSION

For the reasons set forth above, BLyn's motion to stay is **denied**. Crimson's motion to strike portions of BLyn's reply brief and for leave to file a sur-reply, (Doc. 151), is **denied**.

DONE and ORDERED this 1st day of July, 2010.

                                s/ WILLIAM H. STEELE
                                CHIEF UNITED STATES DISTRICT JUDGE