# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| CRIMSON YACHTS, etc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 08-0334-WS-C |
| | ) |
| M/Y BETTY LYN II, etc., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

The plaintiff ("Crimson") filed this action against BLyn II Holding, LLC ("BLyn") in June 2008 to recover for necessaries provided under a vessel repair contract. Crimson also arrested the vessel, which remains in Crimson's shipyard. BLyn filed counterclaims against Crimson and third-party claims against two of Crimson's representatives, corresponding to those made in its April 2008 lawsuit filed against Crimson and its representatives in Texas state court. In August 2010, BLyn filed a Chapter 11 bankruptcy petition in the Southern District of Texas. This case remained stayed until late November 2010, when the Court was notified both that the Bankruptcy Court had lifted the automatic stay so as to allow this suit to proceed to trial and that Crimson had removed BLyn's Texas state action to the Bankruptcy Court. (Doc. 182).[1] Accordingly, the Court ordered the parties to submit briefs setting forth their respective positions as to whether, in light of these events, this matter should be heard by the Bankruptcy Court. The parties were ordered to address, inter alia, any statutory or other mechanisms for effecting a transfer, the requirements for such transfer, and the parties'

---

[1] BLyn filed, but later withdrew, a motion to remand the Texas action to state court. (Doc. 189, Exhibit 1).

[1]

positions as to whether such requirements are satisfied and whether such transfer is appropriate. (Doc. 185). The parties have complied, (Docs. 187, 189, 190), and the issue is ripe for resolution. Only Crimson opposes transfer.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This section permits a district court to transfer a case to another district court where a related bankruptcy proceeding is pending.[2] BLyn's petition is being heard by the Bankruptcy Court, but the Southern District of Texas has adopted an automatic referral order pursuant to 28 U.S.C. § 157, such that a transfer from this district to the Southern District of Texas will result in a referral of this action to the Bankruptcy Court.[3] Despite the existence of the res in this district, the Southern District of Texas qualifies as a district where this action might have been brought.[4] Crimson concurs with these points. (Doc. 190 at 1-2, 8-10). Instead, Crimson argues that the interest of justice and the convenience of the parties do not favor transfer. (*Id*. at 12-19).[5]

---

[2] *E.g., Integrated Health Services, Inc. v. THCI Co.*, 417 F.3d 953, 958 (8th Cir. 2005).

[3] The language of the general order of reference might support the construction that referral of this action, if transferred, would be discretionary rather than automatic because this action was filed before the bankruptcy petition was filed. (Doc. 190, Exhibit 1). The parties do not question that referral would in fact occur, whether automatically or as a matter of discretion.

[4] *Continental Grain Co. v. FBL-585*, 364 U.S. 19 (1960); *accord In re: International Marine Towing, Inc.*, 617 F.2d 362, 364-65 (5th Cir. 1980). Crimson states it "will not argue against [the] application herein" of *Continental Grain*, but it proceeds to question whether that case applies when, as here, the res has not been released. (Doc. 190 at 10). As Crimson concedes, nothing in *Continental Grain* suggests that its decision rests on this distinction, and Crimson is unable to cite any case that has concluded otherwise.

[5] Encore Bank suggests that transfer could be accomplished by a removal under 28 U.S.C. § 1452, followed by a transfer under 28 U.S.C. § 1412. (Doc. 187 at 7-10). Crimson presents a number of potential difficulties with this approach but, because transfer is appropriate under Section 1404(a), the Court need not explore them.

"Section 1404(a) factors include (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). These are the factors that Crimson would have the Court consider. (Doc. 190 at 11). It focuses especially on its choice of an Alabama forum, on the grounds that "'[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.'" (*Id*. (quoting *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)).

The Court chooses a different starting point. A primary component of the "interest of justice" is "the desire to avoid multiplicity of litigation as a result of a single transaction or event." 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 3854 at 250 (3rd ed. 2007) ("Wright & Miller"). This action is largely duplicative of the Texas action now removed to the Bankruptcy Court. In that action, BLyn sued Crimson and its representatives Short and Forrest, on various theories. When Crimson later sued BLyn and the vessel, BLyn asserted the identical claims against Crimson, Short and Forrest as it had in the Texas action.

The primary differences between the two actions are these: (1) BLyn sued two entities in Texas (Overing Yacht Design ("Overing") and Breathwit Marine ("Breathwit")) that it has not sued here; (2) Crimson did not assert against BLyn in the Texas action the claims it has asserted here; (3) the vessel, of course, was not arrested in Texas; and (4) Crimson sued Encore Bank in this action, in order to establish lien priority as to the vessel. These distinctions are not significant in light of the substantial overlap between the two lawsuits. Crimson has articulated, and the Court can discern, no reason that both of these actions should proceed separately to trial. *Cf. Continental Grain Co. v.*

*FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."); *In re: International Marine Towing, Inc.*, 617 F.2d 362, 364-65 (5th Cir. 1980) (Section 1404(a) is designed to "further the public interest … by avoiding duplicate proceedings").

For purposes of Section 1404(a), "when two courts have concurrent jurisdiction over a dispute involving the same parties and issues, as a general proposition the forum in which the first-filed action is lodged has priority." 15 Wright & Miller, § 3854 at 272-74.[6] This principle overrides the usual rule[7] that the party proposing transfer bears the burden of showing that transfer should be ordered. *Id*. The Texas action was filed by BLyn in April 2008, six weeks before Crimson filed this competing action. The Texas action was filed in state court, but once it was removed to Bankruptcy Court – by Crimson – that court became the forum in which the first-filed action is lodged, triggering application of this principle.

Crimson does not address this rule or attempt to show why it should not be applied here. Instead, Crimson argues that BLyn's claims against Overing and Breathwit are not serious ones, (Doc. 190 at 18-19), which merely cements the conclusion that this action is essentially the mirror image of the first-filed Texas action. It is clear that BLyn sued Crimson (and its representatives) before Crimson sued BLyn, and Crimson has not explained why the interest of justice nevertheless calls for Crimson's belated choice of forum to be honored. Nor has Crimson explained why this Court, rather than the Bankruptcy Court, should resolve claims concerning the vessel – the debtor's only asset.

---

[6] *Manuel* itself recognizes this principle, albeit not in a Section 1404(a) context. 430 F.3d at 1135 ("Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule.").

[7] *E.g., In re: Ricoh Corp*., 870 F.2d 570, 573 (11th Cir. 1989).

*Cf. In re: Commonwealth Oil Refining Co.*, 596 F.2d 1239, 1247 (5th Cir. 1979) (in assessing transfer of a chapter 11 proceeding under the predecessor to Bankruptcy Rule 1014(a), which mirrors Section 1404(a), "the most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate."). In short, the interest of justice strongly favors transferring this case to the Southern District of Texas for referral to the Bankruptcy Court.

The existence of an earlier-filed action in another district is not conclusive and may still be outweighed by other Section 1404(a) considerations. 15 Wright & Miller, § 3854 at 275. The Court therefore considers Crimson's arguments concerning them.

Crimson calculates that the average witness will have to travel over 400 additional miles should trial be held in Corpus Christi rather than Mobile. (Doc. 190 at 12). To support this conclusion, Crimson offers a chart listing 44 witnesses. (*Id.*, Exhibit A). Since the parties stated in the joint pretrial document that they expect to call only 15 witnesses, (Doc. 153 at 15), there is a considerable amount of overcounting in Crimson's figures.[8] Crimson, the only party opposing transfer, identifies only five non-party witnesses on its behalf. (*Id.* at 16). While these witnesses must travel, on average, some 500 miles more if trial is in Corpus Christi rather than in Mobile, there are only five of them. This factor may favor retaining jurisdiction, but only weakly.

Crimson concedes that the location of relevant documents and the relative ease of access to sources of proof is a neutral factor. (Doc. 190 at 12-13). It thus does not favor retention of jurisdiction.

BLyn and Encore are located in the Southern District of Texas, while Crimson, Short and Forrest are located in the Southern District of Alabama. (Doc. 190 at 13). Crimson emphasizes that a majority of the parties thus are located in this district, but the

---

[8] *See Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 511 (1947) ("The learned and experienced trial judge was not unaware that litigants generally manage to try their cases with fewer witnesses than they predict in such motions as this.").

disparity is not substantial.  Moreover, BLyn, a Texas resident, filed the first action and would be deprived of the benefit flowing therefrom were transfer to be denied.  This factor does not favor retention of jurisdiction.

Because the disputed repair work, and some (but not all) of the parties' meetings, occurred in Bayou La Batre, the locus of operative facts presumably is in this district. (Doc. 190 at 13).  This circumstance, however, is of limited significance.  *Manuel* is the only known Eleventh Circuit decision to identify the "locus of the operative facts" as a factor in the Section 1404(a) analysis, and it did not explain its origin or its import. Among the factors identified by the Supreme Court, it appears most closely related to that of "a local interest in having localized controversies decided at home," *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 509 (1947), but it is not clear that a contract dispute between a Texas owner and an Alabama shipyard is so localized as to cry out for an Alabama forum.

Crimson calculates that nine witnesses would be beyond subpoena power were this action tried here but that 18 witnesses would be beyond subpoena power were the case transferred.  (Doc. 13-14).  Since there are only 15 probable witnesses, there is a significant degree of overcounting in these figures.  At any rate, Crimson concedes that it is "not aware of an unwilling witnesses [sic] in this matter."  (Doc. 190 at 13).  Since compulsory process is not needed in this case, it is irrelevant whether compulsory process is available, and this factor does not favor retention of jurisdiction.

BLyn is of course seeking reorganization in order to satisfy its debts, but Crimson asserts this is immaterial because BLyn is controlled by several "wealthy individuals" who have the means and apparently the incentive to fund the litigation.  (*Id*. at 16).[9] Crimson does not directly address its own means, asserting only that it is "not a large shipyard."  (Doc. 190 at 15).  Similarly, it describes Short and Forrest simply as "not

---

[9] Crimson points to evidence that BLyn's members have paid BLyn's bankruptcy attorneys, and loaned to BLyn, some $250,000.

wealthy." (*Id*. at 15-16). With limited evidence of BLyn's means and none of Crimson's and its representatives', this factor cannot favor retention of jurisdiction.

Crimson concedes that its primary claim is for a maritime lien governed by admiralty law. (Doc. 190 at 16). It nevertheless argues that the factor of familiarity with governing law favors retention of jurisdiction because the Southern District of Texas is in the Fifth Circuit, not the Eleventh. The implicit assumption here is that the relevant maritime law differs as between these two circuits, but this is not intuitively obvious, especially considering that the Eleventh Circuit sprang from the old Fifth in 1981 and claims the pre-split precedents of the Fifth Circuit as its own. At any rate, "[a] transferee court is not required to apply the law of the transferor court when, as here, the transferee court interprets federal law." *Lanfear v. Home Depot, Inc.*, 534 F.3d 1217, 1223 (11th Cir. 2008).

Crimson also argues that its secondary claim, for breach of contract, implicates Alabama law because the contract contains a choice-of-law provision. (Doc. 190 at 16). Because Crimson did not submit the contract with its brief, the Court cannot verify the assertion. Nor can it do so by reviewing the joint pretrial document, since Crimson did not therein identify the law governing this claim. (Doc. 153 at 3).

In the joint pretrial document, BLyn specifically identified the law governing its claims of fraud, negligence, conversion and breach of bailment contract as that of Alabama. (Doc. 153 at 5-14). Crimson argues that BLyn has thereby "waived" any argument that Texas law applies to BLyn's claims. (Doc. 190 at 16). Since the Texas action is the first-filed action, and since Crimson does not show that BLyn has committed to Alabama law in that action, it is not clear that Crimson's argument is correct. At any rate, a forum's familiarity with the governing law "is given significantly less weight when the case involves basic or sufficiently well-established, as opposed to complex or unsettled, issues of state law or when there is no reason to believe that the applicable law of the forum differs markedly from the law of the proposed transferee state." 15 Wright & Miller, § 3854 at 286-89; *see Gilbert*, 330 U.S. at 509 (1947) (resistance to transfer is

appropriate when the transferee court would have to "untangle problems" in the substantive and conflicts law). Crimson has identified no difficult issues of Alabama law that the Bankruptcy Court would have to untangle. Even if Alabama law governs, this factor weighs but weakly in favor of retaining jurisdiction.

The final two factors are the plaintiff's choice of forum and the interest of justice. As discussed above, the interest of justice favors transfer to the Southern District of Texas, where the first-filed action is pending, and this factor neutralizes the significance ordinarily placed on the plaintiff's choice of forum.

In sum, because the interest of justice favors transfer based on the first-filed rule, transfer will be denied only if the remaining factors outweigh this one. The majority of these factors do not favor Crimson at all, and those that do are of modest weight. After considering the relevant factors, the Court concludes that this case should be transferred to the Southern District of Texas pursuant to Section 1404(a).[10]

For the reasons set forth above, this action is **transferred** to the Southern District of Texas.

DONE and ORDERED this 19th day of January, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[10] No party has moved for transfer. However, a district court may order a transfer under Section 1404(a) sua sponte. *E.g., Mills v. Beech Aircraft Corp.*, 886 F.3d 758, 761 (5th Cir. 1989); *Carver v. Knox County*, 887 F.2d 1287, 1291 (6th Cir. 1989); *Feller v. Brock*, 802 F.2d 722, 729 n.7 (4th Cir. 1986); *Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986); *Lead Industries Association, Inc. v. Occupational Safety and Health Administration*, 610 F.2d 70, 79 n.17 (2nd Cir. 1979). All parties were provided notice that the Court was considering a transfer, and all were afforded – and took – the opportunity to be heard on the issue. *See Costlow*, 790 F.2d at 1488 (sua sponte transfer permissible "so long as the parties are first given the opportunity to present their views on the issue"). No party, including Crimson, suggests the Court lacks authority to order transfer sua sponte under these circumstances.